IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| RON BOPP, *et al.*,<br><br>        Plaintiffs,<br><br>v.<br><br>IDAHO NATIONAL LABORATORY<br>EMPLOYEE RETIREMENT PLAN,<br>BATTELLE ENERGY ALLIANCE,<br>LLC, a Delaware limited liability company,<br>BECHTEL BWXT IDAHO, LLC,<br>a Delaware limited liability company,<br><br>        Defendants. | Case No. CV 09-390-E-MHW<br><br>**AMENDED<br>MEMORANDUM DECISION<br>and ORDER** |

Currently pending before the Court is the Defendants' Motion to Dismiss the First Amended Complaint (Docket No. 29), filed February 1, 2010.[1]

**I.
Background**

In this lawsuit, thirteen individuals[2] who have worked at the Idaho National Laboratory ("INL") for more than fifteen years seek benefits from the Idaho National Laboratory Employee

---

[1] Defendants filed a first Motion to Dismiss Complaint (Docket No. 14) on September 29, 2009. After that motion was filed and fully briefed, Plaintiffs' filed a First Amended Complaint that Defendants seek to dismiss. Defendants' first Motion to Dismiss (Docket No. 14) is hereby MOOT.

[2] Plaintiffs in this case are: Ron Bopp, Clydene Marie Carlson, Richard Frasure, Scott Hancock, Richard Nesmith, Bard Scholes, Michelle Sharp, Craig Simmons, Randall Sorenson, Verl Stuart, Gina Tedford, and David K. Zorn. They will be collectively referred to as "Plaintiffs."

**Memorandum Decision and Order - Page 1**

Retirement Plan ("the Plan"). The individuals are currently working for Bechtel BWXT Idaho, LLC ("Bechtel") at the site.

Over the years, the Department of Energy ("DOE") had various contracts for work to be done at INL with different contractors, including Bechtel, Battelle Energy Alliance, LLC ("Batelle"), CH2M WG Idaho LLC, and Lockheed Martin Idaho Technologies Company. These contractors typically operated under management and operating contracts and participated in the INL Employee Retirement Plan. Plaintiffs allege that when employees moved from one DOE contractor to another, their rights and benefits under the INL Retirement Plan normally traveled with them. First Amended Complaint ("FAC"), Docket No. 27, ¶ 22.

While not entirely clear from the First Amended Complaint and the parties' briefing, it is the Court's understanding that prior to 2001, Bechtel had a management and operating agreement with the DOE and all of the Plaintiffs were Bechtel employees performing work under that contract and were participating in the Plan. At some point the DOE determined that a new contract would be created for certain work to be done at INL. This contract was to be known as the Advanced Mixed Waste Treatment Project Contract ("the Contract"). Whether the Contract was put out for competitive bid is not clear, but in any event British Nuclear Fuels, Ltd. ("British Nuclear") became DOE's contractor for the Contract. This Contract was different than past contracts that the DOE had with other contractors in that it was not a management and operating contract and British Nuclear did not become a sponsor of the INL Retirement Plan like the other INL contractors had been in the past. FAC ¶ 23.

As was customary, after British Nuclear took over, the Plaintiffs immediately stopped being employees of Bechtel and now became employees of British Nuclear doing the same type

**Memorandum Decision and Order - Page 2**

of work that they had done in the past. As employees of British Nuclear they did not accrue any benefits under the INL Plan since British Nuclear was not a Plan sponsor; however, they did participate in British Nuclear's 401(k) plan. Twelve of the Plaintiffs worked directly for British Nuclear while one worked for a British Nuclear subcontractor. Even though British Nuclear was not a sponsor of the Plan, Plaintiffs allege they were told that they would be able to rejoin the Plan if they ever returned to work for one of the Plan employers/sponsors, such as Bechtel. Plaintiffs also allege they were informed that as vested beneficiaries in the Plan, "they would be treated as if they had never left as long as they returned to employment with Bechtel or one of the other INL contractors." FAC ¶ 24.

The Plan is a defined benefit plan, meaning each beneficiary will receive a monthly payment based upon their years of employment as part of the Plan. Bechtel and Batelle are both sponsors of the Plan and Batelle serves as the Plan Administrator. All of the Plaintiffs were vested under the INL Plan prior to the events germane to this lawsuit. Throughout the time that they worked for British Nuclear, Plaintiffs allege they not only maintained their status as vested beneficiaries in the Plan, but they also maintained their status as "participants" under the terms of the Plan. The Plan defines "Participant," in part, as follows:

> 2.42.3  A former Employee with a Vested Right to immediate or deferred benefits, and an Employee who transfers to Contiguous Non-Covered Service after he has commenced participation in the Plan.

Declaration of James P. Baker in Support of Motion to Dismiss First Amended Complaint, Docket No. 31, Ex. A, Idaho National Engineering and Environmental Laboratory Employee Retirement Plan, at BBWI 000022.

Eventually, the DOE decided to replace British Nuclear and had extended discussions

**Memorandum Decision and Order - Page 3**

with Bechtel about replacing British Nuclear under the Contract. An agreement was reached and on May 1, 2005, Bechtel took over the work that British Nuclear had been performing. All of the Plaintiffs, except one,[3] again became Bechtel employees on May 1, 2005.

Two days before Bechtel took over from British Nuclear, on April 29, 2005, Batelle and Bechtel executed a written amendment to the Plan ("the 2005 Amendment"). The 2005 Amendment provides, in relevant part, that any employee that is hired or rehired by Bechtel on or after May 1, 2005 is not an "Eligible Employee" under the Plan unless the employee "is hired as a transfer employee directly from another Plan Sponsor and is actively accruing service in the Plan on the date of hire." Baker Decl., Ex. B at BBWI 000125-000126. It is a requirement under the Plan that an employee be an "Eligible Employee" before they could be an "Active Participant" and receive benefits under the Plan. Baker Decl., Ex. A at BBWI 000010. The Plaintiffs did not fall under the exception that would have allowed them to become active participants in the Plan on the date of hire by Bechtel, since they were not "transfer employees" from another Plan Sponsor who were "actively accruing service in the Plan on the date of hire."

As noted earlier, Plaintiffs did not become employees of Bechtel until May 1, 2005 and at the time of the 2005 Amendment, they were still employees of British Nuclear. In December 2005, Defendants sent a letter to Plaintiffs telling them that they would not be allowed to participate and acquire additional credit in the INL Employee Retirement Plan. This followed a series of meetings in which the Plaintiffs allege they were told that the Defendants were in the process of obtaining DOE approval to allow Plaintiffs to rejoin the Plan. Plaintiffs allege that they have lost "thousands of dollars in future retirement benefits" by virtue of the 2005

---

[3] One plaintiff, Clydene Marie Carlson, was rehired after May 1, 2005.

**Memorandum Decision and Order - Page 4**

Amendment.

In accordance with the Plan's claims procedures, Plaintiffs filed a claim dated August 13, 2005 for reinstatement and benefits under the Plan. On September 8, 2008, Batelle informed Plaintiffs in writing that their claim was denied based on the plain language of the April 29, 2005 Amendment. Plaintiffs duly appealed the denial of their claim for benefits. On January 8, 2009, Plaintiffs were informed in writing that the Plan's Administrative Committee had denied their appeal. Plaintiffs filed suit on August 14, 2009, alleging the following four causes of action against Defendants under the Employee Retirement Income Security Act ("ERISA"): (1) failure to provide notice of amendment; (2) estoppel; (3) interference with protected rights under ERISA; and (4) breach of fiduciary duty.

## II.
## Standard

A motion to dismiss under Rule 12(b)(6) will be granted when the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In a reviewing a complaint under this Rule, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). However, a complaint, or portions thereof, will be dismissed if the plaintiff cannot establish "any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 533, 563 (2007).

A complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations . . . but requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the

**Memorandum Decision and Order - Page 5**

assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. This tenet that allegations must be taken as true does not extend to legal conclusions contained in the complaint. *Ashcroft v. Iqbal*, -- U.S. --, 129 S.Ct. 1937, 1949 (2009). The complaint must plead "enough facts to state a claim of relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Determining whether a complaint states a plausible claim for relief will . . . be a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950.

## III.
## Discussion

### A.    Count One:  Failure to Give Notice of Amendment

Defendants argue the Plaintiffs are not "applicable individuals" entitled to ERISA § 204(h) notice. Each Plaintiff ceased active participation in the Plan years before the 2005 Amendment was adopted.[4] Plaintiffs were no longer accruing benefits at the time of the Amendment and thus Defendants contend that they had no benefit accruals that could be reduced at that time and were not entitled to notice.

Plaintiffs counter that they were entitled to notice because "applicable individual" is defined by statute as "each participant in the plan" and they were in fact participants in the Plan as the Plan's definition of participant includes a former employee with a vested right to immediate or deferred benefits. *See* Baker Decl., Ex. A, at BBWI 000022.

Section 204(h) of ERISA requires that a plan administrator give notice to each

---

[4] Plaintiffs ceased participation in the Plan during the following years: 2001 (Richard NeSmith, Randall Sorenson, Verl Stuart, Gina Tedford, and David K. Zorn) 2002 (Ron Bopp, Richard Frasure, Scott Hancock, Craig Simmons); 2003 (Clydene Marie Carlson, Michelle Sharp and Kenneth Stoneberg); 2004 (Brad Scholes). FAC at ¶¶ 3-15.

**Memorandum Decision and Order - Page 6**

"applicable individual" when an amendment to the plan would result in "a significant reduction in the rate of future benefit accrual for that individual. . ." 29 U.S.C § 1054(h). "Applicable individual" is defined as "each participant in the plan . . . whose rate of future benefit accrual under the plan may reasonably be expected to be significantly reduced by such plan amendment." *Id*. at § 1054(h)(8).

The Court concludes that the Plaintiffs were not entitled to notice of the 2005 Amendment. In reaching this decision, the Court has been guided by well reasoned decisions from two district courts that have considered the same or very similar issues. In addition, regulations adopted by the Treasury Department support the finding that notice was not required.

In *Amara v. CIGNA Corp.*, CIGNA employees had left the company's employ before the plan at issue, "Part B," became effective and then later returned to work for CIGNA. 534 F. Supp. 2d 288 (D. Conn. 2008). Prior to the adoption of Part B, CIGNA had intended to return the "rehires" to the original plan, "Part A," when they became reemployed. *Id*. at 354. However, CIGNA changed this rule to provide that all employees hired by CIGNA after a certain date would be placed in Part B, regardless of whether they had previously accrued benefits under Part A. *Id*. These rehired employees claimed that CIGNA was required to send them § 204(h) notice of this change so they could make an informed decision as to whether to return to CIGNA or not. *Id*. at 355. The question the court addressed was whether separated, vested employees who were no longer accruing benefits under Part A could be considered "reasonably expected" to be affected by the amendment of the rehire rule for notice purposes, simply by virtue of the fact that they had previously had the right to be placed back into Part A upon reemployment. *Id*. The court concluded that CIGNA had no duty to provide notice of the

**Memorandum Decision and Order - Page 7**

amended rehire rule to all separated, vested employees - the valid amendment of Part B was itself sufficient to inform those employees of their rights under the Plan. *Id*. at 356.

The facts in the case of *Ensley v. Ford Motor Company* are markedly similar to the instant case in that it involved Ford employees who on a date certain became employees of another corporation, retained their same duties and responsibilities, and years later again became employees of Ford, doing the same job. 647 F. Supp. 2d 791 (E.D. Mich. 2007).[5] The Ford employees became employees of the new "spin off" corporation on June 28, 2000. *Id*. at 795. The transfer to the new corporation was involuntary and mandatory and as of that date they were no longer Ford employees. *Id*. Several months later, in August 2000, Ford amended its plan, agreeing to retain liability for pension benefits up to the time of transfer, but the new corporation was required to establish a substantially similar retirement program for the former Ford employees. *Id*. In November, 2003, Ford amended its plan again and provided that any employee hired or re-hired by Ford after January 1, 2004, would be excluded from participating in the Ford Group Retirement Plan. *Id*. New hires or re-hires would instead participate in a different retirement plan. *Id*. Two years later, Ford reacquired the spin-off corporation and the employees were forced to accept transfer of employment back to Ford and become participants under the new retirement plan. *Id*. at 795-96. The plaintiffs in *Ensley* argued that they should have received notice of the August 2000 and November 2003 amendments that Ford made to its plan. *Id*. at 802-03. As here, they argued that they were participants in the Ford plan and would now be receiving less in benefits after becoming reemployed by Ford in 2005. *Id*. at 803.

---

[5] The *Ensley* case arose under an earlier version of § 204(h) that was worded in a slightly different fashion and contained an arguably broader definition of whom notice should be given to, *i.e.* to "participants" in a plan as opposed to the term of "applicable individuals" used in the current version of § 204(h). However, both versions only required that notice be given if there was going to be a significant reduction in the rate of future benefit accrual.

**Memorandum Decision and Order - Page 8**

The court rejected plaintiffs' argument that they were entitled to notice of the amendment. The court stated that plaintiffs' position was premised in part on an argument that they were still accruing benefits at the time of the amendment but in fact, at the time of the amendment they were employees of the other corporation and not entitled to receive any future benefits under the Ford plan. *Id.* at 803-804. The amendment did not affect plaintiffs' future benefit accrual because their future benefit accrual had ceased, along with their employment, after June 28, 2000. *Id*.

The Treasury Department, through the Internal Revenue Service, has issued regulations to provide guidance on whom should receive notice of a plan amendment. *See* 26 C.F.R. § 54.4980F-1. Question Ten of these regulations addresses to whom § 204(h) notice must be provided. The regulation provides that § 204(h) notice must be provided "to each applicable individual and to each employee organization representing participants who are applicable individuals." *Id*. at (a). Applicable individual is defined by the regulation "each participant in the plan, and any alternate payee, whose rate of future benefit accrual under the plan is reasonably expected to be significantly reduced . . ." *Id*. at (b). Question Ten's third example involves a hypothetical where a plan sponsor adopted an amendment which would significantly reduce the future accrued benefits for all current employees. However, the amendment would *not* reduce the rate of future benefit accrual of former employees who were entitled to deferred vested benefits. The conclusion was that the plan administrator was not required to give § 204(h) notice to any former employees. *Id*. at (f), Ex. 3.

As in the example, the Plaintiffs were former employees that were vested participants in the Plan. The 2005 Amendment did not change the benefits of the separated, vested participants.

**Memorandum Decision and Order - Page 9**

Instead, it changed the definition of Eligible Employee to exclude persons hired by Bechtel on or after May 1, 2005.  At the time of the 2005 Amendment, Plaintiffs were not Eligible Employees actively accruing benefits in the Plan.  As such, their rate of *future* benefit accrual would not be significantly reduced by the Amendment and they were not entitled to notice under ERISA § 204(h).

**B.     Count Two: Estoppel**

Defendants request that Plaintiffs' estoppel claim be dismissed because Plaintiffs have failed to allege in the First Amended Complaint all of the elements for such a claim under Ninth Circuit case law.  Early Ninth Circuit cases recognized that estoppel principles could be applied to pension plans.  These cases identified the traditional elements that a plaintiff must show as: (1) that the party to be estopped knew the relevant facts; (2) that the party to be estopped intended that its conduct would be acted on or acted in a way that the plaintiff had a right to believe it was so intended; (3) that the plaintiff was ignorant of the true facts; and (4) that the plaintiff relied on the former's conduct to his injury.  *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1096 (9th Cir. 1985).  Later cases added two additional elements when an estoppel claim is being asserted under ERISA: The provisions of the plan at issue must be ambiguous such that a reasonable person would disagree as to their meaning or effect *and* representations must be made to the employee involving an oral interpretation of the plan.  *Greany v. Western Farm Bureau Life Ins. Co.*, 973 F.2d 812, 821 (9th Cir. 1992).  "Unless both conditions are met . . . a beneficiary has no equitable estoppel claim."  *Id*. at 822 (citing *Simmons v. Southern Bell Tel. & Tel. Co.*, 940 F.2d 614, 618 (11th Cir. 1991).

With these standards in mind, the Court will first address whether the Plan is ambiguous

**Memorandum Decision and Order - Page 10**

and last, Defendants' detrimental reliance argument.

In regard to the ambiguity aspect of the estoppel claim, Plaintiffs point out that for four months after Bechtel took over the Contract, Defendants had not taken a definitive position as to whether Plaintiffs would be permitted to resume acquiring benefits in the Plan and were telling Plaintiffs it was "the right thing to do." Plaintiffs argue that the Plan and its amendments cover well over 100 pages, with multiple definitions, and even the Defendants must have been confused since it took several months before they issued their determination that Plaintiffs were not eligible to join the Plan.

Contrary to the Plaintiffs' position, the Court finds that the 2005 Amendment was not ambiguous as a matter of law. Initially the Plan, as amended through October 1, 2009, defined in § 2.26 who would be considered an eligible employee able to participate in the Plan as an "individual who is an Employee . . ." and then described five groups of workers, such as leased employees, who would *not* be eligible employees able to participate in the Plan.

Section 2.26 of the Plan was amended in 2003 to further define leased employees that were excluded from participating, and again in early 2005, to exclude any employee hired or rehired by Battelle after February 1, 2005. Interestingly, this exclusionary language relating to former Battelle employees mirrors the exclusionary language in the April 29, 2005 Amendment for Bechtel employees. The 2005 Amendment, as did the earlier two amendments, clearly stated who were *not* eligible employees that could participate in the Plan. The Court agrees with Plaintiffs that the Plan is lengthy, contains many definitions and was amended on several occasions; however that in and of itself does not make a plan ambiguous.

If the language at issue in the plan is not ambiguous, a participant of the plan cannot rely

**Memorandum Decision and Order - Page 11**

on oral statements or representations by a plan employee of what coverage would be afforded because to allow that to occur would expand benefits not expressly provided for by the language of the plan itself.  *See Greany*, 973 F.2d at 822.   In making this holding the Ninth Circuit expressly adopted the reasoning of the Fifth Circuit in *Rodrigue v. Western and S. Life Ins. Co.,* 948 F.2d 969, 971 (5th Cir. 1991) (ERISA writing requirement protects the plan's actuarial soundness by preventing plan administrators from contracting to pay benefits to persons not entitled to them under the express terms of the plan).

Even assuming *arguendo* that the 2005 Amendment was ambiguous, the Defendants assert that Plaintiffs have not identified any oral representations interpreting the 2005 Amendment as providing them with the benefits they seek.  The Court agrees that a statement that it's the "right thing to do," apparently made in the context that someone at Bechtel thought it would be the right thing to do to try and get the Plaintiffs back into the Plan as eligible employees is not an oral representation of what benefits the Plan would provide.  However, even assuming someone at Bechtel was exploring getting the Plaintiffs back into the Plan to do so would have required another written amendment to the Plan, since the 2005 Amendment expressly stated they would not be participants.

Plaintiffs state in paragraph 27 of the First Amended Complaint that the summary plan description  ("SPD") provisions clearly gave the Plaintiffs the right to earn additional benefits after being rehired by Bechtel or any other sponsoring employer.  While the Plaintiffs couch their argument as a conflict between the 2005 Amendment and what they were advised in the SPD, the Defendants counter by arguing that these documents are not inconsistent.

The SPD provision states that for vested participants who are later rehired, "cumulative

service will include service before your termination when you are later rehired." Yet, such employees "earn additional benefits based only on your credited service and earnings after reemployment." The rehire section deals only with the issue of how prior service is treated upon rehire but does not address the circumstances under which rehired employees are eligible to accrue additional new benefits under the Plan, only that this is based on credited service and earnings *after* reemployment. There was no credited service for the Plaintiffs after Bechtel took over because they were excluded by the 2005 Amendment and not eligible to participate in the Plan. There is no ambiguity or conflict between the SPD and the Plan.

Defendants also submit that Plaintiffs have failed to allege detrimental reliance and accordingly, their estoppel claim should be dismissed. Plaintiffs' allegation that they "were entitled to rely and did rely upon Defendants in connection with their work on the Contract" is not sufficient to survive the motion to dismiss; instead, Plaintiffs must allege that they have made a choice that resulted in some detriment to them. While Plaintiffs argue that their reliance was detrimental because they were not allowed to acquire more credits under the Plan in the post May 1, 2005 period, they do not allege that they accepted employment with British Nuclear, where their service was excluded from the Plan, because Defendants told them they would be able to automatically rejoin the Plan later. Nor are there any allegations that they accepted work with Bechtel on May 1, 2005 based on a misunderstanding that they were entitled to rejoin the Plan.

The Plaintiffs have failed to adequately allege the detrimental reliance element of an estoppel claim.

**Memorandum Decision and Order - Page 13**

C.     **Count Three: Violation of Plan and Interference with Protected Rights**

Defendants interpret this claim as one alleging a violation of ERISA § 510 whereas Plaintiffs submit that there are actually three bases for this claim:  (1) Defendants violated the Plan because their SPD conflicted with the 2005 Amendment, meaning the SPD controls; (2) Defendants chose to discriminate against Plaintiffs when they were reemployed on May 1, 2005 which violated an actual provision in the Plan; and (3) Defendants violated ERISA § 510.

In regard to the § 510 claim, Defendants argue that the Plan Amendment was not an "adverse employment action" as contemplated by § 510 because it did not interfere with an employment right to which Plaintiffs were entitled.  Plaintiffs' employment was transferred from British Nuclear to Bechtel but Defendants submit that there is no allegation that this caused Plaintiffs to forfeit any accrued Plan benefits or that the transfer was done with the purpose of cheating Plaintiffs out of existing benefits.

ERISA § 510 provides that it shall be unlawful for any person to "discharge, fine, suspend, expel, discipline or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . ."  29 U.S.C. § 1140.  Section 510 "protects employment relationships from disruptions designed to frustrate the vesting of benefit plan rights or the continued enjoyment of rights already vested but yet to be partaken."  *Teumer v. General Motors Corp.*, 34 F.3d 542, 544 (7th Cir. 1994).  It does *not* protect employees against all actions undertaken with "an eye toward thwarting the attainment of benefits; only changes in one's *employment status* cannot stem from benefit-based motivations."  *Id*. at 545 (emphasis in original).   Even

**Memorandum Decision and Order - Page 14**

repeatedly amending the terms of a plan specifically to avoid payment of benefits to the employee is not implicated by § 510 because it not taken against the employment situation itself. *Id*.

The Sixth Circuit has also expressly held that actions taken with respect to a plan itself, actions that may affect the status or scope of an ERISA plan, are not protected by § 510. *Coomer v. Bethesda Hospital, Inc.*, 370 F.3d 499, 507-08 (6th Cir. 2004). That court further noted that nothing in § 510 or the case law demonstrates that § 510 was "designed to limit the discretion afforded employers in the creation or amendment of ERISA plans." *Id*. at 509. "'[A] plaintiff must show that the alleged discrimination was designed either to retaliate for the exercise of a right or to interfere with the attainment of an entitled right. It is insufficient merely to allege discrimination in the apportionment of benefits under the terms of the plan.'" *Id*. (quoting *Owens v. Storehouse, Inc*., 984 F.2d 394, 398 (11th Cir. 1993)). The court ultimately held in that case that § 510's prohibition does not limit a plan sponsor's ability to design or amend a plan in any way it desires, so long as it does not reduce the participants' vested benefits. *Id*. at 510.

With regard to Plaintiffs' § 510 claim, Plaintiffs do not allege how, other than the 2005 Amendment, Defendants have interfered with their rights or discriminated against them. As noted above, actions taken with respect to the plan itself are not protected by § 510. Even if given leave to amend, Plaintiffs cannot state a claim for a § 510 violation since there was no adverse employment action. It has been consistently held that plan amendments or terminations that eliminate plan benefits do not state a claim under ERISA § 510.

With regard to the other two theories advanced by Plaintiffs in this section, Plaintiffs

argue that the timing of the 2005 Amendment "interferes" with Plaintiffs' attainment of the right to accrue future credits in the Plan.  Plaintiffs argue that Defendants adopted their last minute amendment for the purpose of denying Plaintiffs future benefits they would otherwise be accruing under the Plan.  Defendants point out that the rehire provision in the SPD clearly states that employees who are rehired earn additional benefits "only on [their] credited service and earnings *after* reemployment."  The Court agrees with Defendants and has addressed the SPD and the 2005 Amendment in the earlier section of this opinion.  As for discrimination, the 2005 Amendment provides that *all* employees hired by Bechtel on or after May 1, 2005, except those actively accruing benefits at the time of hire, are ineligible to accrue additional benefits.  Therefore, there was no discrimination against former Bechtel employees.

4.  **Count Four: Breach of Fiduciary Duty**

Plaintiffs allege that Defendants owed fiduciary obligations to the vested beneficiaries in the Plan and breached these obligations with respect to Plaintiffs by: (1) altering the Plan on April 29, 2005; (2) failing to provide advance notice to Plaintiffs when the Plan was altered on April 29, 2005; (3) the disparate treatment of the Plan's vested beneficiaries working on the Contract; pre-May 1, 2005 workers are denied future participation while post-May 1, 2005 workers continue to receive future benefits; and (4) misinforming Plaintiffs that working on the Contract for British Nuclear would not impact future benefits when they went back to work for a Plan sponsor like Bechtel.  Essentially, Plaintiffs use this claim as a "catch all" for all their other claims, including lack of notice, discrimination, and misrepresentation.

Defendants argue that Plaintiffs have failed to allege any wrongful fiduciary conduct by Defendants. First, they point out that plan sponsors who amend or alter the terms of a plan are

not fiduciaries and are generally free under ERISA to adopt, modify, or terminate a pension plan since they act in the capacity as settlors of a trust. Second, Defendants argue that Plaintiffs were not entitled to notice because they were not "eligible employees." Thirdly, Defendants state that all employees, whether rehired or new hires, are treated the same under the 2005 Amendment, they do not accrue additional benefits, so there is no discrimination. Finally, as to the fourth point, there were no misrepresentation made to the Plaintiffs that they would be entitled to be active participants in the Plan after they were rehired by Bechtel.

Plaintiffs first argue that fiduciary duty claims should not be decided at a motion to dismiss stage. *See Frommert v. Conkright*, 433 F.3d 254 (2d Cir. 2006). Additionally, the term "fiduciary" is to be liberally construed, consistent with the remedial purposes of ERISA.

ERISA is rooted in trust law and imposes fiduciary duties on plan administrators and trustees that they must deal fairly and communicate material facts to the beneficiaries. *See Washington v. Bert*, 504 F.3d 818, 823 (9th Cir. 2007). An ERISA fiduciary is obligated to "discharge [its] duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1).

As to the first point argued by Plaintiffs, plan sponsors who alter the terms of a plan are not acting as fiduciaries. *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996). Employers are generally free under ERISA to adopt, modify or terminate welfare plans, for any reason and at any time. *Id*. When they take these actions, they are acting as settlors of a trust, not fiduciaries. *Id*. Therefore, Plaintiffs' first basis for breach of fiduciary duty has no legal foundation. As to the second point, the Court has already discussed why the Plaintiffs were not entitled to notice of the 2005 Amendment. Likewise as to the third point, the Court has already found that there was

**Memorandum Decision and Order - Page 17**

no discrimination, therefore there is no legal basis for Plaintiffs' disparate treatment argument.

This brings us to the last point argued by Plaintiffs, that the Defendants made a misrepresentation to them about their eligibility to again become eligible employees once they were rehired by Bechtel. The Court does not find any misrepresentation in this case. Although, previously, individuals in Plaintiffs' position had been allowed to rejoin the Plan when they were again employed by a Plan sponsor, that fact does not prevent Defendants from amending the Plan. As discussed in the equitable estoppel section, the fact that Defendants may have stated that they were looking into getting Plaintiffs reinstated into the Plan or that it was the "right thing to do" are not material misrepresentations that could be relied upon. Nor do Plaintiffs allege that they did rely on such statements to their detriment.

The conduct that Plaintiffs complain of implicates Defendants' role as settlors of the Plan, not their rule as fiduciaries in managing or administering the Plan and its assets. *See Lockheed*, 517 U.S. at 890. The Court does not find that Plaintiffs have stated a plausible claim for breach of fiduciary duty.

## ORDER

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that:**

1) Defendants' Motion to Dismiss (Docket No. 14), filed September 29, 2009, is **MOOT**; and

2) Defendants' Motion to Dismiss First Amended Complaint (Docket No. 29), filed February 1, 2010, is **GRANTED**.



DATED: May 7, 2010

_____
Honorable Mikel H. Williams
United States Magistrate Judge

**Memorandum Decision and Order - Page 19**